UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OHIO NURSES ASSOCIATION, et al., )  | |
| ) | Case No. 4:06-CV-02088 |
| Plaintiffs, ) | |
| ) | JUDGE ANN ALDRICH |
| v. ) | |
| ) | |
| FORUM HEALTH, et al., ) | |
| ) | |
| Defendants. ) | MEMORANDUM AND ORDER |
| ) | |
| ) | |

Before the court is the motion of plaintiffs Ohio Nurses Association ("ONA"), Youngstown General Duty Nurses Association ("YGDNA"), and District 1199 Health Care and Social Service Union, SEIU ("SEIU") for a temporary restraining order [Docket No. 5] barring defendants Forum Health, Trumbull Memorial Hospital, and Western Reserve Healthcare (collectively, "Forum Health") from terminating union-member nurses and other non-professional employees as part of a contemplated contract with Diamond Healthcare Corporation ("Diamond") where Diamond would assume control over Forum Health's behavioral medicine services. For the following reasons, the court grants the motion for a temporary restraining order.

**I. Background**

YGDNA, whose nurse members would be directly affected by the proposed outsourcing, is affiliated with ONA, the statewide union. SEIU is a multistate organization representing certain non-professional employees who would be affected. Forum Health is an Ohio not-for-profit corporation providing health care services in Mahoning and Trumbull counties in Ohio. ONA, YGDNA and Forum Health are parties to a collective bargaining agreement governing employment of ONA/YGDNA member-nurses at Forum Health facilities. SEIU and Forum Health are parties to a collective bargaining

agreement governing employment of SEIU members. The two locations at issue in this litigation are the Western Reserve campus and Trumbull Memorial Hospital, where Forum Health provides behavioral health services.

On or about July 26, 2006, employees were notified that Forum Health had entered into a letter of intent to have Diamond assume operation and management of all of Forum Health's behavioral medicine services, effective October 1, 2006. At the same time, those employees were notified that, to continue employment, they would need to re-apply for their jobs with Diamond, and that they would otherwise be terminated on October 1, 2006. In mid-August 2006, Diamond began recruiting employees to fill jobs currently held by ONA, YGDNA and SEIU union members. SEIU filed a grievance concerning this matter on July 31, 2006, amending its grievance on August 28, 2006. ONA/YGDNA filed a grievance on August 1, 2006, amending that grievance on August 4, 2006.

ONA, YGDNA and SEIU allege that the proposed termination of their members and outsourcing of their members' jobs violates the collective bargaining agreements in place between the unions and Forum Health. Specifically, the proposed termination of positions as a result of the contemplated contract with Diamond appears to be addressed by the SEIU agreement in Article 41 (Supervision/Job Erosion) and Article 45 (Subcontracting). The ONA/YGDNA collective bargaining agreement sets out mandatory grievance procedures in Article 7 (Grievance Procedure), including wage and seniority provision in Articles 14 and 19. Article 19 specifically governs lay-off and termination procedures. In other words, both collective bargaining agreements appear to have provisions that would bar the proposed arrangement, and both collective agreements appear to have provisions that would require arbitration of such a dispute before the arrangement with Diamond could take place. Forum Health responds that, as a cost-cutting measure, it is exiting the behavior health services business and that the

contemplated contract with Diamond is permitted under the "management rights" sections of both collective bargaining agreement. However, Forum Health concedes that it will still own the facilities where behavior health services are provided, and that Forum Health will provide "certain support services to Diamond" under the contemplated contract "including billing, financial, medical records, dietary and ancillary services." Defs.' Mem. in Opp'n to Pls.' Mot. for TRO, at 10.

## II. Discussion

Generally speaking, the Norris-LaGuardia Act ("NLGA") bars federal courts from interceding in labor disputes. *Aluminum Workers Int'l Union v. Consol. Aluminum Corp.*, 696 F.2d 437, 441 (6th Cir. 1982) (citing 29 U.S.C. § 104). However, "the Supreme Court has recognized a 'narrow exception' to the anti-junction policy of the [NLGA]." *Id.* (citing *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970)). Although *Boys Markets* involved an anti-strike injunction, the courts have "extended the *Boys Markets* exception to embrace employer behavior which has the effect of evading a duty to arbitrate or which would otherwise undermine the integrity of the arbitral process." *Id.* (citations omitted).

> In order to obtain an injunction, a plaintiff must satisfy the *Boys Markets* criteria:
>
>> First, the controversy must involve or grow out of a labor dispute within the meaning of Section 4 of the [NLGA]. Second, a full evidentiary hearing must be held. Third, the court must find that the dispute underlying the controversy is subject to binding arbitration under the terms of the collective bargaining agreement. Finally, the traditional equitable bases for injunctive relief must be met. A court has jurisdiction to issue an injunction only where all four of the above steps have been completed and satisfied.

*Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am. v. Lester Eng'g Co.*, 718 F.2d 818, 822 (6th Cir. 1983). The parties do not dispute that the controversy arises out of a "labor dispute" as defined by the NLGA, and an evidentiary hearing was held in this matter on September 5, 2006.

Therefore, the court must determine (1) whether "the underlying grievance is one which the parties are contractually bound to arbitrate;" (2) "breaches of the agreement are occurring and will continue, or have been threatened and will be committed;" (3) "the union has suffered or will suffer irreparable harm as a result;" (4) "the union will suffer more from denial of the injunction than the company will from its issuance;" and (5) "there is no adequate legal remedy for the violation of the collective bargaining agreement." *Consol. Aluminum Corp.*, 696 F.2d at 442 (citing *Boys Markets*, 398 U.S. at 254); *Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am. v. Lester Eng'g Co.*, 718 F.2d 818, 824 (6th Cir. 1983).

In determining whether "the underlying grievance is one which the parties are contractually bound to arbitrate," *Consol. Aluminum Corp.*, 696 F.2d at 442, "[d]oubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960). Forum Health claims that the contemplated arrangement with Diamond is both permitted and rendered non-arbitrable by the management rights clauses in the two collective bargaining agreements at issue because Forum Health is "exiting" the behavioral health services business. *See, e.g., Allied Sys., Ltd. v. Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm.*, 179 F.3d 982, 985 (6th Cir. 1999) (concerning litigation over pay rates as a result of the closing of a facility); *Lester Eng'g Co.*, 718 F.2d at 819 (concerning litigation over the closing of a manufacturing facility). However, the behavior health facilities at the Western Reserve campus and Trumbull Memorial Hospital are not being closed as the facilities in *Allied Systems* and *Lester Engineering* were. Instead, Forum Health will continue to own the facilities and provide "support services" as they do now. While Diamond will actually "operate" the facility and provide behavioral health services, the entire point of the contemplated arrangement is to provide uninterrupted service to the community despite the contract. The union employees, however,

will be terminated as a result of this arrangement, and be forced to re-apply for the jobs they currently hold in order to remain at the Western Reserve campus and Trumbull Memorial Hospital facilities. Therefore, the court finds that the contemplated arrangement with Diamond is not covered by the management rights provisions, and is subject to binding arbitration as required by both collective bargaining agreements. The court also finds that the contemplated arrangement is at least a breach of the collective bargaining agreements that has been threatened and will be committed. *Consol. Aluminum Corp.*, 696 F.2d at 442.

The issues of irreparable harm and lack of an adequate remedy at law are inextricably linked. Forum Health claims (1) that even if its contemplated arrangement with Diamond violates the collective bargaining agreement, an arbitrator could rescind that contract, reinstate terminated employees, and award back pay, and (2) that Diamond will be bound by the existing collective bargaining agreements thanks to the successorship provisions in those agreements. Forum Health's latter assertion, that Diamond would be bound by the existing collective bargaining agreements thanks to successorship provisions, is belied by the proposed arrangement. If Diamond were so bound, then it could not terminate all current employees and require them to re-apply for their own jobs, against new (presumably more inexpensive, as cost-cutting is the entire goal of the arrangement) applicants. More to the point, given the method Diamond has proposed to hire employees once it assumes control over behavioral health services, there is no reason to assume Diamond would be bound either by the collective bargaining agreements or by any arbitrator appointed pursuant to those agreements. *Serv., Hosp., Nursing Home & Pub. Employees Union v. Commercial Prop. Servs., Inc.*, 755 F.2d 499, 503 (6th Cir. 1985). Therefore, this court finds that the plaintiffs have demonstrated the likelihood of irreparable harm, as well as the lack of an adequate remedy at law.

Finally, the court must balance the equities and determine whether "the union will suffer more from denial of the injunction than the company will from its issuance." *Consol. Aluminum Corp.*, 696 F.2d at 442. Forum Health contends that in providing behavioral health services, it has suffered losses of $4 million from January 2006 to date, and that a temporary restraining order in this matter would ensure further losses, as well as the risk that the community would lose almost all behavioral medicine services if Forum Health were to collapse as a result of its losses. Despite Forum Health's financial situation, nothing in the record before this court indicates that *these* particular losses are the losses causing Forum Health's financial condition, or that *these* particular losses will lead to Forum Health's collapse. The court recognizes the financial difficultly being experienced by Forum Health but finds, in balancing the equities, that it must abide by the contracts it has signed already before entering into any others in an attempt to cut costs. While Forum Health's risk of further losses may be increased by a temporary restraining order in this matter, the court finds that the unions will suffer more from denial of a temporary restraining order than Forum Health and the public will from its issuance.

### III. Conclusion

It is therefore ordered that the defendants and all persons acting by and for them are temporarily enjoined from entering into an agreement with Diamond Healthcare Corporation to transfer the management and delivery of its behavioral medicine services to Diamond, transferring the management and delivery of the behavioral medicine services to Diamond Healthcare Corporation, and/or from terminating plaintiffs' members employed in the Behavioral Medicine Services, pending a final and binding resolution of the grievances by an arbitrator.

It is further ordered that this temporary restraining order shall expire at 5:00 p.m. on the 29th day of September, 2006 unless it is further extended by order of this court.

It is further ordered that this temporary restraining order is on condition that a bond be filed by plaintiffs in the sum of Three Hundred Thousand dollars ($300,000.00) on or before 12:00 p.m. on the 18th day of September, 2006, conditioned to pay any costs awarded against plaintiffs and any damages that may be incurred or sustained by defendants by reason of this temporary restraining order, should the same hereafter be dissolved on the ground that defendants wrongfully were enjoined or restrained herein.

IT IS SO ORDERED.

      /s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: September 15, 2006**